IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1.  LISA KOPF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-15-361-HE |
| | ) | |
| 1. RANDALL EDWARDS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

_____

**DEFENDANT DARNELL'S MOTION AND BRIEF**
**FOR SUMMARY JUDGMENT**
_____

Ambre C. Gooch, OBA No. 16586
COLLINS, ZORN & WAGNER, P.C.
429 NE 50th, Second Floor
Oklahoma City, Oklahoma 73105
Telephone: (405) 524-2070
Facsimile: (405) 524-2078
E-mail Address for service:
gooch@czwglaw.com

ATTORNEY FOR DEFENDANT JOHN
DARNELL

MARCH 11, 2016

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i-ii

TABLE OF AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii-v

LIST OF ATTACHMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LcvR 56.1(b) STATEMENT OF MATERIAL FACTS . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT AND AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I.     STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II.    DARNELL IS ENTITLED TO QUALIFIED IMMUNITY . . . . . . . . . . . . . . . . . 9

     A.     Plaintiff's speech was not on a matter of public concern, and thus
           her First Amendment constitutional right was not violated . . . . . . . . . . 10

     B.     Plaintiff's claimed First Amendment protection, in the
           context of what was known to Darnell at the time,
           was not clearly established . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

III.   PLAINTIFF CANNOT MEET HER PRIMA FACIE CASE
      FOR HER FIRST AMENDMENT CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

     A     Plaintiff's speech was made pursuant to her official duties . . . . . . . . . . . 14

     B.     Plaintiff's speech was not on a matter of public concern . . . . . . . . . . . . . 14

     C.     The CCSO's interest in promoting trust and safety outweigh
           Plaintiff's alleged free speech interest . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

     D.     Plaintiff's speech was not a motivating factor in
           her termination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

E.    Darnell conducted his background investigation and
        interview of Plaintiff, and he made his recommendation
        to not retain Plaintiff, regardless of her alleged report
        of alleged inmate abuse . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

IV.    DARNELL HAS NO OFFICIAL CAPACITY . . . . . . . . . . . . . . . . . . . . . . . . . . 21

V.     DARNELL DID NOT VIOLATE OKLAHOMA PUBLIC POLICY . . . . . . . . 22

VI.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

# TABLE OF AUTHORITY

**CASES**                                                                 **PAGE**

*Adkins v. Rodriguez*, 59 F.3d 1034 (10th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . 9

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Bishop v. Wood,* 426 U.S. 341, 9 S.Ct. 2074,
48 L.Ed2d 684 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Brandon v. Holt*, 469 U.S. 464, 105 S.Ct. 873,
L.Ed.2d 878 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Brousseau v. Haugen*, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) . . . . . . . . . . . . . . . . . . . 12

*Burk v. K-Mart Corporation*, 770 P.2d 24 (Okla. 1989) . . . . . . . . . . . . . . . . . . . . . . . . 23

*Butler v. City of Prairie Village*, 172 F.3d 736 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . 18

*Celotex Corp. v. Cattrett*, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*City of St. Louis v. Praprotnik*, 485 U.S. 112,
108 S. Ct. 915, 99 L. Ed. 2d 107 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Conaway v. Smith*, 853 F.2d 789 (10th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 16

*Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684,
75 L.Ed.2d 708 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Garcetti v. Ceballos*, 547 U.S. 410 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . 13-15, 17-20

*Gros v. City of Grand Prairie, Tex.*, 181 F. 3d 613 (5th Cir. 1999) . . . . . . . . . . . . . . . 21

*Houston v. Reich*, 932 F.2d 883 (10th Cir.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Hunter v. Bryan*, 502 U.S. 224, 112 S.Ct. 532,
116 Ed.2d 589 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Jantzen v. Hawkins*, 188 F3d 1247 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Jett v. Dallas Independent School District*, 491 U.S. 701, 109 S. Ct. 2702,
105 L. Ed. 2d 598 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Johnson v. Weld County, Colorado*, 594 F.3d 1202 (10th Cir. 2010) . . . . . . . . . . . . . . 5

*Koch v. Hutchinson*, 847 F.2d 1436 (10th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Lytle v. City of Haysville, Kan.*, 138 F.3d 857 (10th Cir. 1998) . . . . . . . . . . . . . . . 15, 16

*Melton v. City of Oklahoma City*, 879 F.2d 706 (10th Cir. 1989) . . . . . . . . . . . . . . . . 15

*Meyers v. Eastern Oklahoma County Technology Center*,
776 F.3d 1201 (10th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Mick v. Brewer*, 76 F.3d 1127 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Monell v. New York City Dept. of Social Services*,
436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Morfin v. City of East Chicago*, 349 F.3d 989 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . 19

*Mount Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274,
97 S.Ct. 568, 50 L.Ed.2d 471 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . 9, 10

*Pearson v. Callahan*, 555 U.S. 223 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Pembaur v. City of Cincinnati*, 475 U.S. 469,
106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Pickering v. Bd. of Educ.*, 391 U.S.563 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-20

*Rankin v. McPherson*, 483 U.S. 378 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Rock v. Levinski, et al.*, 791 F.3d 1215 (10th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Saucier v. Katz*, 533 U.S. 194 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Trant v. Oklahoma*, 754 F.3d 1158 (10th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Wilburn v. Mid-South Health Dev't, Inc.*, 343 F.3d 1274 (10th Cir. 2003) . . . . . . . . . . . 23

*Wulf v. City of Wichita*, 883 F.2d 842 (10th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . 15

## STATUTES

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13, 21

Okla. Stat. tit. 19, § 131 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Okla. Stat. tit. 19, § 513 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Okla. Stat. tit. 19, § 547 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

## RULES

Fed. R. Civ. P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 56 (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Civ. P. 56.1(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**ATTACHMENTS TO MOTION FOR SUMMARY JUDGMENT FOR DARNELL**

Exhibit 1    Excerpts of the deposition of Plaintiff Lisa Kopf taken on January 4, 2016

Exhibit 2    Excerpts of the deposition of Sheriff Edwards taken on March 1, 2016

Exhibit 3    Excerpts of the deposition of Deputy John Darnell taken on March 1, 2016

Exhibit 4    Sheriff Edwards's Response to Interrogatories

Exhibit 5    Letter from Edwards to Plaintiff dated July 9, 2014

Exhibit 6    Candian County Personnel Policy Handbook, effective February 1, 2013

Exhibit 7    Acknowledgment of receipt of the employee personnel policy handbook, signed and dated November 7, 2013

Exhibit 8    Darnell's background investigative report on Plaintiff (Filed Under Seal)

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

1.  LISA KOPF,                          )
                                        )
            Plaintiff,                  )
                                        )
vs.                                     )          Case No. CIV-15-361-HE
                                        )
1. RANDALL EDWARDS, et al.,             )
                                        )
            Defendants.                 )

## DEFENDANT DARNELL'S MOTION AND BRIEF
## FOR SUMMARY JUDGMENT

Defendant John Darnell requests that the Court grant summary judgment in his favor pursuant to Fed. R. Civ. P. 56.

## STATEMENT OF THE CASE

This is an employment case filed by Plaintiff Lisa Kopf (Plaintiff) against Sheriff Edwards and Deputy Darnell.  This Motion is submitted on behalf of Deputy Darnell only; Edwards is submitting a Motion separately.  Plaintiff alleges that Deputy Darnell retaliated against her by conducting a background investigation on her, which included his interviewing her for over an hour, and thereafter recommending that she not be retained as a deputy sheriff, for exercising her First Amendment right to report alleged inmate abuse.  However, this purported speech is not entitled to First Amendment protection but even so, Darnell was not aware Plaintiff had allegedly reported alleged inmate abuse, and thus he could not have retaliated against her for doing so.  Further, Darnell conducted his background investigation and interview of Plaintiff in the same or closely similar manner as he had other

persons who were similarly situated to Plaintiff.  Defendant Darnell is entitled to qualified immunity and to summary judgment as a matter of law.

## **LCvR 56.1(b) STATEMENT OF MATERIAL FACTS**

Pursuant to LCvR 56.1(b), Defendant Darnell contends that there is no genuine issue of material fact as to the following:

1.      Plaintiff began working for the Canadian County Sheriff's Office as a jailer in November 2013. See Exhibit 1, Depo. of Plaintiff at 40:23-41:2.

2.      Sheriff Edwards promoted Plaintiff from Jailer to deputy sheriff in March 2014.  See Exhibit 1, Depo. of Plaintiff at 112:12-113:18.

3.      Plaintiff understood that undergoing a background investigation was required in order to become a deputy sheriff.  See Exhibit 1, Depo. of Plaintiff at 177:24-178:6; 182, ln. 17-21.

4.      It is the practice of the CCSO to conduct background investigations on all individuals who will become deputy sheriffs, and Plaintiff was no exception. See Exhibit 2, Deposition of Sheriff Edwards at 51:12-16.

5.      Darnell has conducted all the background investigations on new hires since he began working for CCSO in January 2009. See Exhibit 3, Depo. of Darnell at 9:7-10).

6.      The background investigation and interview process is lengthy, involving many steps and questions. If Darnell finds issues of concern, he expands the investigation accordingly. See Exhibit 3, Depo. of Darnell at 10:19-15:3).

7.      The promotion to deputy sheriff included a pay raise.  See Exhibit 1, Depo. of

2

Plaintiff at 113:12-14.

8.      Once Plaintiff was promoted to Deputy Sheriff, she was initially assigned to the Jail.  After completing the Field Training Officer (FTO) Program, she was assigned to the Civil Division in April 2014. <u>See</u> Exhibit 1, Depo. of Plaintiff at 114:2-115:11.

9.      Plaintiff "liked" that she was being assigned to the Civil Division, which she considered to be a more desirable assignment than was the jail.  <u>See</u>  Exhibit1, Depo. of Plaintiff at 116:20-117:3.

10.     Edwards terminated Plaintiff on July 9, 2014 because she misrepresented the truth and deliberately omitted information from her background and was insubordinate <u>See</u> Exhibit 4, Sheriff Edwards's Response to Interrogatories 7-8; Exhibit 5, Letter from Edwards to Plaintiff dated July 9, 2014; Exhibit 2, Depo. of Edwards at 44:4-19.

11.     Plaintiff violated CCSO policy by reporting alleged inmate abuse outside the CCSO, without having first reported it to administration within the CCSO.   The potential harm in doing this is compromised internal investigations, compromised court cases, and officer safety is jeopardized.  (Exhibit 2, Depo. of Edwards at 33:23-35:7.

12.     Plaintiff never made a complaint of gender discrimination during her employment  with the CCSO.  <u>See</u> Exhibit 1, Depo. of Plaintiff at 120:11-14.

13.     Plaintiff was aware of the complaint procedure and policy within the CCSO during her employment there.   <u>See</u> Exhibit 1, Depo. of Plaintiff at 120:17-20.

14.     Plaintiff complains that Michael Larimer was hired in from the outside as a Deputy Sheriff before she was promoted to Deputy Sheriff, and that this is gender

discrimination.  However, Plaintiff admits that Larimer worked as a CLEET certified officer at another agency before he was hired at the CCSO and Plaintiff had not worked anywhere as a CLEET certified officer, prior to her employment at the CCSO. <u>See</u> Exhibit 1, Depo. of Plaintiff at 122:12 - 124:20.

15.     Plaintiff complains that Chris Bryam was promoted to Deputy Sheriff before she was promoted to Deputy Sheriff, and that this is gender discrimination.  However, Plaintiff admits that Bryam had been employed at the CCSO as a jailer longer than she had been. <u>See</u> Exhibit 1, Depo. of Plaintiff at 124:19 - 125:10; 152:23 - 153:12.

16.     Plaintiff complains that other persons were hired as deputy  sheriffs straight into the Patrol Division (vs the Civil Division), and that this is gender discrimination.  However, Plaintiff is unable to identify any of these persons by name and she does not know any of their qualifications. <u>See</u> Exhibit 1, Depo. of Plaintiff at 125:11 - 126:5.

17.     Plaintiff contends being assigned, as a deputy sheriff, to the Patrol Division is better than being assigned to the Jail or the Civil Division.  However, she admits the pay and title of "Deputy Sheriff" are the same in all three divisions.  <u>See</u> Exhibit 1, Depo. of Plaintiff at 126:6 - 127:4.

18.     Plaintiff never requested to be assigned to the Patrol Division. <u>See</u> Exhibit 1, Depo. of Plaintiff at 127:9-11.

19.     Plaintiff admits male deputy sheriffs were assigned to both the Jail and to the Civil Division.  <u>See</u> Exhibit 1, Depo. of Plaintiff at 127:24 - 128:4.

20.     Plaintiff cannot identify one person who went from working in the Jail straight

to working in the Patrol Division.  <u>See</u> Exhibit 1, Depo. of Plaintiff at 133:24 - 134:9.

21.     Plaintiff complains about the length of her background investigation interview that was conducted by Darnell.  Plaintiff's only evidence that other person's interviews were longer than hers is one person told her that his interview was only 15 minutes[1].  <u>See</u> Exhibit 1, Depo. of Plaintiff at 130:14 - 131:13; 135:9-22; 137:5-9.

22.     The following persons background interviews, that occurred at some point between January 1, 2009, to July 8, 2014,  lasted one and a half hours more: Stella Amos, Candice Armstrong, Terry Bickford, Ben Brown, Eric Bruce, Shawna Cornish, June Delov, Justin Grimes, Alexander Guinn, Matthew Hall, Juan Hernandez, Karla Hotchkiss, Blaine Lander, Brandon Owens, Bruce Reynolds, Jeffery Robbins, Erika Roberts, Brent Robinson, Larry Vaughn, Joshua Lenz, Kally Watson, Randy Wood.  <u>See</u> Exhibit 4, Sheriff Edwards's Response to Interrogatory 17.

23.     Darnell was not Plaintiff's supervisor. <u>See</u> Exhibit 1, Depo. of Plaintiff at 140:2-4).

24.     Plaintiff is aware CCSO had a policy to not smoke in patrol vehicles.  <u>See</u> Exhibit 1, Depo. of Plaintiff at 159:5-10.

25.     While Plaintiff was a jailer at the CCSO, she perceived CCSO jailer Austin

---

[1]However, this is inadmissible hearsay testimony and cannot be used to prevent summary judgment.  <u>See</u> *Johnson v. Weld County, Colorado*, 594 F.3d 1202, 1210 (10th Cir. 2010).  (FRCP 56 does not provide that hearsay testimony which would be inadmissible at trial somehow becomes admissible simply by being included in an affidavit to defeat summary judgment).

Albrecht abused an inmate in the CCSO Jail, so she contacted her "mentor," Dee Patty, about it. Patty was not employed at the CCSO and she was not in Plaintiff's chain of command. See Exhibit 1, Depo. of Plaintiff at 162:23-166:3.

26.     The reason, according to the Plaintiff, she reported this to Dee Patty is because Patty is someone she trusted and she wanted Patty's advice and mentoring.    See Exhibit1, Depo. of Plaintiff at 165:25-166:3.

27.     As a jailer in the CCSO, one of Plaintiff's job duties was to report wrong doing, including alleged inmate abuse, if she witnessed it. See Exhibit 1, Depo. of Plaintiff at 166:8-14.

28.     Plaintiff's claim that she was criticized for reporting alleged inmate abuse to CCSO supervisors Johnson or Ellison is not part of this lawsuit. See Exhibit 1, Depo. of Plaintiff at 171:19 - 172:17.

29.     The Employee Handbook provides that if an employee feels he or she has been subjected to discrimination, the discriminatory conduct should be reported to the employee's immediate supervisor, another supervisor, or the Board of Commissioners within three calendar days of the offense. See Exhibit 6, Employee Handbook at bates 1206-1207.

30.     Plaintiff received the Employee Handbook.  See Exhibit 1, Depo. of Plaintiff at 181:3-12; Exhibit 7, Employee Handbook receipt.

31.     Plaintiff did not discuss the alleged inmate abuse by Austin Albrecht with Darnell.  See Exhibit 1, Depo. of Plaintiff at 233:8-12.

32.     Plaintiff has no evidence that Darnell even knew about the Austin Albrecht-

alleged inmate abuse issue.  <u>See</u> Exhibit 1, Depo. of Plaintiff at 233:13-18.

33.     In fact, Darnell did not learn about the Austin Albrecht alleged inmate abuse

issue until February 29, 2016 when Albrecht gave his deposition in this case.  <u>See</u> Exhibit3,

Depo. of Darnell at 91:24-92: 8.

34.     Sheriff Edwards told the Plaintiff that he had an open door policy.  <u>See</u> Exhibit

1, Depo. of Plaintiff at 230:17 - 231:10.

35.     Plaintiff did not keep records of her time or accrued sick and vacation leave

while employed at the CCSO. <u>See</u> Exhibit 1, Depo. of Plaintiff at 58:24 - 59:9.

36.     Plaintiff cannot dispute her time records maintained by the Sheriff's Office.

<u>See</u> Exhibit 1, Depo. of Plaintiff at 59:10-14.

37.     Plaintiff's only complaint regarding unpaid wages is that because she was

terminated, she was unable to be paid for sick leave. <u>See</u> Exhibit 1, Depo. of Plaintiff at 62:9

- 63:17; 209:20 -  210:3.

38.     Plaintiff is not claiming in this lawsuit that she was not paid in full for vacation

or comp time.  <u>See</u> Exhibit 1, Depo. of Plaintiff at 209:4-12.

39.     According to Plaintiff, no  one told Plaintiff she was terminated because she

is female.  <u>See</u> Exhibit 1, Depo. of Plaintiff at 177: 13-15.

40.     According to Plaintiff, no one told her she was terminated in retaliation for

reporting alleged inmate abuse.  <u>See</u> Exhibit 1, Depo. of Plaintiff at 177:16-23.

41.     Sheriff Edwards is the decision maker for employee hiring and firing.  <u>See</u>

Exhibit 2, Depo. of Edwards at 12:1-3.

42.     Darnell recommended that Plaintiff not be retained as a deputy sheriff because she is not trustworthy to hold a position which allows her to carry a badge and weapon because she was not truthful on her application or in her interview.  See Exhibit 8, Darnell's background investigative report on Plaintiff.

43.     Plaintiff's background investigation revealed she had used methamphetamine, a fact she did not disclose on her application. See Exhibit 2, Depo. of Edwards at 37:1-9.

44.     Plaintiff's background investigation revealed that she did not disclose the circumstances regarding her termination from a prior employer, on her employment application.   See Exhibit 2, Depo. of Edwards at 16:22-4.

45.     The comments Darnell allegedly made about Plaintiff's competency and "keeping her around" if she did not get involved with guys occurred prior to Plaintiff's promotion to Deputy Sheriff. See Exhibit 1, Depo. of Plaintiff at 137:18-140:1; 154:10-21.

46.     The comment Travis Carmack allegedly made that females should not be supervisors occurred prior to Plaintiff's promotion to Deputy Sheriff. See Exhibit 1, Depo. of Plaintiff at 141:9-142:1.

## ARGUMENT AND AUTHORITY

## I.     STANDARD OF REVIEW.

Rule 56(a) of the Federal Rules of Civil Procedure provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Celotex*

*Corp. v. Cattrett*, 477 U.S. 317 (1986).

The Supreme Court stated that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Furthermore, they held that "if the evidence is merely colorable, or not significantly probative, summary judgment may be granted," and that "the mere existence of a scintilla of evidence in support of a plaintiff's position will be insufficient." *Id*. In other words, to overcome summary judgment, evidence must exist that is substantial enough that a reasonable jury could find for the plaintiff. Conversely, the party moving for summary judgment meets its burden by demonstrating the lack of evidence in support of plaintiff's position. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 325).

## II.  DARNELL IS ENTITLED TO QUALIFIED IMMUNITY.

Darnell is entitled to qualified immunity in this case. Qualified immunity is an affirmative defense that provides complete immunity to suit in a § 1983 action against a defendant in his individual capacity. *Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995). When the defense is raised, the plaintiff has the burden to prove the defendant's actions violated a constitutional right, and that the allegedly violated right was clearly established at the time of the conduct at issue. *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996). Government officials are entitled to this immunity "unless it is demonstrated that their conduct violated clearly established constitutional rights of which a reasonable person in their positions would have known." *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1251 (10th

9

Cir. 1999). In other words, unless the official violates a constitutional right in a way that he knows or should know is unconstitutional, qualified immunity attaches and he cannot be held liable. The issue of qualified immunity is for the courts to decide, and not the trier of fact. *Hunter v. Bryan*, 502 U.S. 224, 112 S.Ct. 532, 537, 116 Ed.2d 589 (1991).

In a qualified immunity analysis, the Court must first determine whether a constitutional right has been violated. If no constitutional right has been violated based on the facts alleged, no further inquiry is required and the defendant is entitled to summary judgment. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), *overruled in part, Pearson v. Callahan*, 555 U.S. 223 (2009).

### A. Plaintiff's speech was not on a matter of public concern, and thus her First Amendment constitutional right was not violated.

In this case, Plaintiff alleges that she had a First Amendment right to report alleged inmate abuse to her "mentor" Dee Patty, a non-CCSO employee. However, this speech is not a matter of public concern, and thus is not entitled to First Amendment protection. Because Plaintiff has no First Amendment right in this speech, her First Amendment constitutional right was not violated and Plaintiff cannot meet this prong (that her constitutional right was violated) of Darnell's qualified immunity defense.

"[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency." *Connick v. Myers*, 461 U.S. 138, 103 S.Ct.

1684, 1690, 75 L.Ed.2d 708 (1983) (citing *Bishop v. Wood,* 426 U.S. 341, 349-350, 9 S.Ct. 2074, 2079-2080, 48 L.Ed2d 684 (1976). The speaker's motive in making the speech is highly important when analyzing whether speech is a matter of public concern. *Conaway v. Smith,* 853 F.2d 789, 796 (10th Cir. 1988). "Whether the speech was calculated to disclose misconduct or dealt with only personal disputes and grievances with no relevance to public interests" is a determinate factor in a public concern analysis. *Id.* (citing *Koch v. Hutchinson*, 847 F.2d 1436, 1445-46 (10th Cir. 1988) (en banc).

Here, Plaintiff's disclosure of the alleged inmate abuse to Patty is not a matter of public concern, and therefore is not protected First Amendment speech. Plaintiff herself claims that she reported the purported abuse to Patty because she wanted Patty's advice regarding the lack of discipline imposed on a fellow jailer. See Material Fact No. 26.  In other words, Plaintiff was not seeking to make public, or bring attention to, the alleged inmate abuse. Rather, she was merely airing a personal grievance with how CCSO handled the situation. Because this speech was not on a matter of public concern, Plaintiff is not entitled to First Amendment protection for it and as a result, no constitutional right was violated. Additional reasons illustrating that Plaintiff's constitutional right was not violated are discussed in Proposition III below.

**B.    Plaintiff's claimed First Amendment protection, in the context of what was known to Darnell at the time, was not clearly established.**

However, should this Court determine that Plaintiff was entitled to First Amendment protection for her report to Patty, the Court must then determine whether such right was

11

clearly established. The relative, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable official in the defendant's position that his conduct was unlawful in the situation he confronted. *Saucier, supra,* at 202; *See also Brousseau v. Haugen*, 125 S.Ct. 596, 599, 160 L.Ed.2d 583 (2004) (emphasizing inquiry should be conducted in light of the specific context of the case). Here, it was not clear to Darnell that his conduct could be unlawful in the situation with which he was confronted. It is the practice of the CCSO to conduct background investigations on all individuals who will become deputy sheriffs, Plaintiff was no exception, and Darnell has conducted all the background investigations on new hires since he began working for CCSO in January 2009. See Material Facts Nos. 4-5.

Plaintiff has presented no evidence that Darnell's background investigation or interview of her was in response to her report of alleged inmate abuse. See Material Fact No. No. 32. Plaintiff did not discuss the alleged inmate abuse by Austin Albrecht with Darnell. See Material Fact No. 31. To the contrary, Darnell did not learn about the Austin Albrecht alleged inmate abuse issue until February 29, 2016 when Albrecht gave his deposition in this case. See Material Fact No. 33. Additionally, it is the practice of the CCSO to conduct background investigations on all individuals who will become deputy sheriffs, and Plaintiff was no exception (see Material Fact No. 4), and Darnell conducted interviews of more than 20 people, including men and women, between 2009 and 2014 which last more than an hour and half. See Material Fact No. 22. These facts simply do not support an allegation that Darnell knew conducting a background investigation and/or interview of Plaintiff would

12

violate Plaintiff's constitutional right.

As discussed above, to overcome summary judgment,  Plaintiff has the burden to prove that Darnell's actions violated her constitutional right (allegedly her First Amendment right to free speech), and that such right was clearly established at the time of the purported violation.  She cannot do so based on the facts at hand. Plaintiff's speech is not entitled to First Amendment protection, and because it is not constitutionally protected, she had no right that could have been violated. Even if her speech is entitled to First Amendment protection, Plaintiff can still not show that it was clear to Darnell, in the situation with which he was presented in this case, that his conduct was unlawful.  Therefore, Darnell is entitled to qualified immunity and summary judgment.

## III.   PLAINTIFF CANNOT MEET HER PRIMA FACIE CASE FOR HER FIRST AMENDMENT CLAIM.

Even if this Court determines that Darnell is not entitled to qualified immunity, he is still entitled to summary judgment on Plaintiff's 42 U.S.C. § 1983 claim against him because Plaintiff cannot meet her burden to prove a prima facie case for First Amendment retaliation.

Under the *Garcetti/Pickering* test established by the United States Supreme Court, there are five relevant factors to consider in a claim asserted by a public employee for retaliation based on the exercise of First Amendment Rights. *See Garcetti v. Ceballos*, 547 U.S. 410 (2006); *Pickering v. Bd. of Educ.*, 391 U.S.563 (1968). The five factors are:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4)

whether the protected speech was a motivating factor in the adverse
employment action; and (5) whether the defendant would have reached the
same employment decision in the absence of the protected conduct.

*Rock v. Levinski, et al.*, 791 F.3d 1215, 1219 (10th Cir. 2015) (quoting *Garcetti, supra,* and

*Pickering, supra*). Here, Plaintiff cannot establish these five factors. Thus her claim of First

Amendment retaliation fails.

### A.    Plaintiff's speech was made pursuant to her official duties.

In Count II of her Complaint, Plaintiff alleges she was subjected to a two hour

background interview by Darnell shortly after reporting what she asserts was inmate abuse.

See Dkt. 1, Complaint, p. 6-7, ¶ 24. However, reporting the alleged abuse to her supervisors

was part of her job duties, and thus was not protected speech under the First Amendment. *See*

*Garcetti, supra,* at 1960 ("when public employees make statements pursuant to their official

duties, the employees are not speaking as citizens for First Amendment purposes, and the

Constitution does not insulate their communications."). Plaintiff confirmed in her deposition

that reporting what she asserts was abuse was part of her duties as a jailer. See Material Fact

No. 27. Because she reported the alleged abuse to her superiors as part of her official duties,

the speech was not covered under the First Amendment.  Thus, Plaintiff cannot meet factor

one of the *Garcetti/Pickering* test and she has not met her prima facie case of First

Amendment retaliation.

### B.    Plaintiff's speech was not on a matter of public concern.

Plaintiff's speech was not on a matter of public concern, as discussed in Proposition

II(A) above.   Thus, Plaintiff cannot meet factor two of the *Garcetti/Pickering* test and she

14

has not met her prima facie case of First Amendment retaliation.

> **C.    The CCSO's interest in promoting trust and safety outweigh Plaintiff's alleged free speech interest.**

Defendant Darnell contends that the interest of the CCSO in conducting background investigations on deputy sheriffs to ensure it is employing reputable, trustworthy deputies outweighs the interests of Plaintiff's alleged free speech, thus preventing Plaintiff from satisfying the third factor of the *Garcetti/Pickering* test.   Plaintiff violated CCSO policy by reporting alleged inmate abuse outside the CCSO, without having first reported it to administration within the CCSO.   The potential harm in doing this is compromised internal investigations, compromised court cases, and jeopardized officer safety.   See Statement of Material Fact No. 11.

As a sheriff's office employee, Plaintiff had a responsibility to exercise a certain degree of caution when speaking about incidents in the jail and the resulting discipline, or lack thereof. "The burden of caution [an employee] bear[s] with respect to the words [she] speak[s]' varies with [her] job responsibilities. *Lytle v. City of Haysville, Kan.*, 138 F.3d 857 (10th Cir. 1998) (citing *Rankin v. McPherson*, 483 U.S. 378, 390 (1987)). The Tenth Circuit has recognized as critical "the importance of confidentiality to the performance of police officers' responsibilities," and that such breaches result in negative impacts on an officer's job performance. *Id*. at 867. (citing *Melton v. City of Oklahoma City*, 879 F.2d 706, 717 (10th Cir. 1989). Police departments, especially, have a "heightened interest" in maintaining harmony among employees. *Wulf v. City of Wichita*, 883 F.2d 842, 861 (10th Cir. 1989).

15

When speech is "unnecessarily disruptive," the weight given to its protection is diminished when balancing it against the government's interests as part of the *Pickering* test. *Id*. at 867.

Here, Plaintiff claims she was terminated[2] from her employment because she asserted a detention officer abused an inmate. [See Dkt. 1, p. 6, ¶ ¶ 22-23]. Plaintiff acknowledges, though, that she reported the alleged abuse to an individual outside the CCSO (See Statement of Material Fact No. 25), one who had no authority to address or investigate Plaintiff's claims, and who was outside her chain of command.  The court in *Lytle* determined when a police officer made complaints regarding other officers' misconduct, his speech was unnecessarily disruptive and "called for a degree of caution that he failed to exercise." *Id*. They reached that decision in part because he failed to pursue his concerns within the department, breached general department confidentiality rules and could have used "less disruptive internal channels, rather than going outside the city Administration." *Id*. at 866-867 (quoting *Conaway v. Smith*, 853 F.2d 789, 798 (10th Cir. 1988)). In this case, Plaintiff diminished the weight that should be given to the interest of her freedom of speech, when balancing it against CCSO's interests, by complaining about the mistreatment outside of the sheriff's office and outside her chain of command. Although Defendants unequivocally deny her termination was based on her report of alleged inmate abuse, the interests of maintaining safety and trust within the CCSO far outweighed Plaintiff's alleged freedom of speech, in this case.

---

[2]It is undisputed that Darnell did NOT terminate Plaintiff.  See Statement of Material Fact 10.

16

Plaintiff cannot meet factor three of the *Garcetti/Pickering* test and she has not met her prima facie case of First Amendment retaliation.

**D.     Plaintiff's speech was not a motivating factor in her termination.**

Plaintiff has presented no evidence that Darnell's background investigation or interview of her, and his resulting recommendation that she not be retained as a deputy sheriff, was in response to her report of alleged inmate abuse. See Material Fact No.  No. 32. Plaintiff did not discuss the alleged inmate abuse by Austin Albrecht with Darnell.  See Material Fact No. 31.  To the contrary, Darnell did not learn about the Austin Albrecht alleged inmate abuse issue until February 29, 2016 when Albrecht gave his deposition in this case. See Material Fact No. 33.

Additionally, it is the practice of the CCSO to conduct background investigations on all individuals who will become deputy sheriffs, Plaintiff was no exception, and Darnell has conducted all the background investigations on new hires since he began working for CCSO in January 2009. See Material Facts Nos. 4-5. Notably, Darnell conducted interviews of more than 20 people, including men and women, between 2009 and 2014 which last more than an hour and half.  See Material Fact No. 22.  These facts simply do not support Plaintiff's allegation that Darnell's background investigation or interview of her, and his resulting recommendation that she not be retained as a deputy sheriff,  was in response to her report of alleged inmate abuse.

Plaintiff alleges that Darnell told her he would "do anything he could to get her fired," but has not demonstrated that this comment was "substantially motivated by [her] protected

speech (or any other unlawful reason, for that matter) or that [Defendant] made his comments with a retaliatory intent." *Trant v. Oklahoma*, 754 F.3d 1158, 117 (10th Cir. 2014) (citing *Butler v. City of Prairie Village*, 172 F.3d 736, 746 (10th Cir. 1999). <u>See also</u> *Meyers v. Eastern Oklahoma County Technology Center*, 776 F.3d 1201, 1207 (10th Cir. 2015) (the fourth prong of the *Garcetti/Pickering* test focuses on the employer's intent, so a recommended termination based on insubordination was lawful despite an exercise of protected speech); *and Mount Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) ("substantial" factor equates to "motivating" factor).

The decision in *Trant* concerned a plaintiff who made allegations to the Oklahoma Board of Medicolegal Investigations that an investigation of the medical examiner's office regarding sexual harassment complaints was conducted improperly. Following those allegations, a medical examiner's office employee reported to the Board that he was unhappy the plaintiff's management of the office, and made comments to the media that plaintiff was "inept or incompetent, was a liar and was mentally unstable." *Id.* at 1170 (internal quotation and citation omitted). The plaintiff then filed suit against the employee based on retaliation. The court found that the defendant employee was not acting in retaliation when he made the statements because they were unrelated to the plaintiff's speech, which concerned reporting investigation irregularities and only concerned the Board. As the defendant employee was not a Board member, he had no motive for retaliating against the plaintiff. *Id.* at 1171.

The facts in this case are analogous to those in *Trant*. Plaintiff's reporting of purported alleged abuse of an inmate while she was a jailer is completely unrelated to Darnell's

18

background investigation and interview of Plaintiff.  Darnell was a CCSO employee, not a Jail employee, and the alleged abuse about which Plaintiff reported involved the Jail, not the CCSO. Plaintiff did not discuss the alleged inmate abuse by Austin Albrecht with Darnell. See Material Fact No. 31. Darnell did not even learn about the Austin Albrecht alleged inmate abuse issue until February 29, 2016 when Albrecht gave his deposition in this case. See Material Fact No. 33.  Additionally, it is the practice of the CCSO to conduct background investigations on all individuals who will become deputy sheriffs, and Plaintiff was no exception (see Material Fact No. 4), and Darnell conducted interviews of more than 20 people, including men and women, between 2009 and 2014 which last more than an hour and half.  See Material Fact No. 22.  Darnell clearly had no retaliatory motive for conducting the background investigation and interview and resulting recommendation to not retain Plaintiff.

Plaintiff cannot  establish a causal connection between her alleged report of inmate abuse and Darnell's background investigation, including his interview of her, or his recommendation to terminate.  Where Darnell was unaware of her report, he could not possibly have conducted the background interview in retaliation for her report. *See Morfin v. City of East Chicago*, 349 F.3d 989, 1005 (7th Cir. 2003) (when a defendant is not aware that protected conduct occurred, that conduct cannot form the basis for a retaliation claim). Thus, Plaintiff cannot meet factor four of the *Garcetti/Pickering* test and she has not met her prima facie case of First Amendment retaliation.

19

### E.     Darnell conducted his background investigation and interview of Plaintiff, and he made his recommendation to not retain Plaintiff, regardless of her alleged report of alleged inmate abuse.

As to the final factor of the *Garcetti/Pickering* test, Darnell would have performed the background check on Plaintiff regardless of whether she reported the reported the alleged inmate abuse to her superiors or to her mentor.  It is the practice of the CCSO to conduct background investigations on all individuals who will become deputy sheriffs, and Plaintiff was no exception (see Material Fact No. 4), and Darnell conducted interviews of more than 20 people, including men and women, between 2009 and 2014 which last more than an hour and half.  See Material Fact No. 22.

Additionally, Darnell would have recommended that Plaintiff not be retained as a deputy sheriff regardless of her alleged report of inmate abuse. Darnell made this recommendation because she is not trustworthy to hold a position which allows her to carry a badge and weapon because she was not truthful on her application or in her interview.  See Statement of Material Fact No. 42. Plaintiff's background investigation revealed she had used methamphetamine, a fact she did not disclose on her employment application, AND that she did not disclose the circumstances regarding her termination from a prior employer, on her CCSO employment application.   See Statement of Material Fact No. 42-43.  These are legitimate, non-discriminatory reasons for recommending her termination had nothing to do with the Plaintiff's alleged report of inmate abuse. Plaintiff cannot meet factor five of the *Garcetti/Pickering* test and she has not met her prima facie case of First Amendment retaliation.

Because Plaintiff cannot establish each of the five factors in the *Garcetti/Pickering* analysis, Darnell is entitled to summary judgment on Plaintiff's First Amendment retaliation claim.

## IV.    DARNELL HAS NO OFFICIAL CAPACITY.

Plaintiff's § 1983, official capacity claim against Darnell must fail because he has no final policy-making authority with regard to the operation or management of the CCSO and, thus, no such "official capacity" under Oklahoma law.  Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n. 55, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  However, for such to occur, the officer must have "'final policymaking authority.'" *Gros v. City of Grand Prairie, Tex.*, 181 F. 3d 613, 615 (5th Cir. 1999) (quoting *Jett v. Dallas Independent School District*, 491 U.S. 701, 737, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989)).  In this regard, the Tenth Circuit Court of Appeals has stated:

> Appellants, citing *Brandon v. Holt*, 469 U.S. 464, 471-72, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985), argue that the Board should be held liable because [Sheriff] Hawkins in his official capacity "is essentially the same entity as the Board." **However, a municipality cannot be liable under § 1983 for acts of a municipal official in his official capacity "unless that official possesses final policymaking authority to establish municipal policy with respect to acts in question**." *Houston v. Reich*, 932 F.2d 883, 887 (10th Cir.1991) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)).

*Jantzen v. Hawkins*, 188 F3d 1247, 1259 (10th Cir. 1999) (emphasis added).

In determining whether the officer has such authority "state law ... will *always* direct

a court to some official or body that has the responsibility for making law or setting policy in any given area of a local government's business." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988), *Id.* at 125 (emphasis in original). Pursuant to Oklahoma Statutes, the County Sheriff is an independently elected official with the charge and custody of the county jail and jail inmates. *See* Okla. Stat. tit. 19, §§ 131 and 513. Additionally, pursuant to Okla. Stat. tit. 19, § 547, the Sheriff is responsible for the official acts of his undersheriff and deputy sheriffs.

As such, the Sheriff of Canadian County is the only named defendant who had final policy-making authority with regard to the CCSO. It is undisputed that Sheriff Edwards is the decision maker for employee hiring and firing. See Material Fact Statement No. 41. Plaintiff has not alleged and in fact has no evidence that Sheriff Edwards delegated any final policy-making authority to Darnell at at any time pertinent to the claims herein; nor does she have any evidence that Darnell engaged in any *de facto* exercise of such authority relative the Plaintiff's claims herein. Accordingly, Plaintiff simply cannot establish liability against Darnell in his "official" capacity" and he is entitled to summary judgment with regard to such claim.

## V.    DARNELL DID NOT VIOLATE OKLAHOMA PUBLIC POLICY.

In Count III of her Complaint, Plaintiff alleges that she was terminated for reporting alleged inmate abuse in violation of a clearly defined public policy. It is not clear from the Complaint whether she is making this claim against Darnell and of course, it is undisputed that Darnell did not terminate Plaintiff. See Material Fact No. 10. To the extent Plaintiff is

22

suing Darnell in Count III of her Complaint, such a claim unequivocally fails because Plaintiff has not articulated or specified what state constitutional, statutory, regulatory, or decisional law Darnell allegedly violated.

Although Oklahoma is an at-will employment state, the court in *Burk v. K-Mart Corporation*, 770 P.2d 24, 28 (Okla. 1989) determined that there is a "public policy exception to the at-will termination rule in a narrow class of cases in which the discharge is contrary to a clear mandate of public policy." Additionally, the "clear and compelling public policy on which the plaintiff relies must be articulated by state constitutional, statutory, regulatory or decisional law." *Wilburn v. Mid-South Health Dev't, Inc.*, 343 F.3d 1274, 1277 (10th Cir. 2003). Because Plaintiff has failed to articulate state constitutional, statutory, regulatory or decisional law Darnell purportedly violated (See Count III of her Complaint), as required for a *Burk* claim, her claim must fail and Darnell is entitled to summary judgment.

## VI.    CONCLUSION

Plaintiff's claims for First Amendment retaliation and public policy violation against Darnell fails.  Plaintiff's report of alleged inmate abuse is not entitled to First Amendment protection, and Darnell did not retaliate against Plaintiff based on this supposed report. It is the practice of the CCSO to conduct background investigations on all individuals who will become deputy sheriffs, and Plaintiff was no exception.  Darnell has conducted all the background investigations on new hires since he began working for CCSO in January 2009. The background investigation and interview process is lengthy, involving  many steps and

questions. If Darnell finds issues of concern, he expands the investigation accordingly.

Darnell conducted interviews of more than 20 people, including men and women, between

2009 and 2014 which last more than an hour and half, so Plaintiff was not singled out when

she was interviewed for an hour and a half for any unlawful reason.  Given these undisputed

facts, Plaintiff's claimed First Amendment protection, in the context of what was known to

Darnell at the time, was not clearly established.  Darnell is entitled to qualified immunity and

to summary judgment as a matter of law.

Respectfully submitted,

s/ Ambre C. Gooch
Ambre C. Gooch, OBA No. 16586
COLLINS, ZORN & WAGNER, P.C.
429 NE 50th, Second Floor
Oklahoma City, Oklahoma 73105
Telephone: (405) 524-2070
Facsimile: (405) 524-2078
E-mail Address for service:
gooch@czwglaw.com

ATTORNEY FOR DEFENDANT JOHN
DARNELL

24

## CERTIFICATE OF SERVICE

I hereby certify that on March 11, 2016, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Timothy D. Beets - via electronic mail at: Beets@midtownattorneys.com
Tracy Zahl - via electronic mail at: Zahl@midtownattorneys.com
MIDTOWN ATTORNEYS, P.C.
1213 North Classen Blvd.
Oklahoma City, OK 73106
***Attorneys for Plaintiff***

s/Ambre C. Gooch
Ambre C. Gooch