# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LISA KOPF, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CIV-15-0361-HE |
| | ) | |
| BOARD OF COUNTY COMMISSIONERS | ) | |
| OF THE COUNTY OF CANADIAN, ex rel. | ) | |
| CANADIAN COUNTY SHERIFF'S | ) | |
| DEPARTMENT, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff Lisa Kopf ("Kopf") filed this suit against defendants Sheriff Randall Edwards ("Edwards") and Deputy Sheriff John Darnell ("Darnell" or "Lt. Darnell"), alleging she was terminated from her employment as a deputy sheriff in the Canadian County sheriff's office based on gender discrimination, contrary to Title VII of the Civil Rights Act, and in retaliation for her exercise of free speech rights. She also asserts a common law tort under state law. Both defendants have moved for summary judgment on all claims.

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." Tabor v. Hilti, Inc., 703 F.3d 1206, 1215 (10th Cir. 2013) (citation omitted). And in determining whether this standard is met, the court views the evidence in the light most favorable to the non-moving

party. Estate of Booker v. Gomez, 745 F.3d 405, 411 (10th Cir. 2014).

Factual Background

The following facts are either undisputed or viewed in the light most favorable to plaintiff as the non-movant.[1] Kopf started working for the Canadian County sheriff's office ("CCSO") on November 1, 2013, as a jailer. Approximately two months later, on December 26, 2013, she witnessed a jailer treat an inmate in a manner that she considered abusive. She immediately reported the incident to her supervisor. However, she was concerned that her report did not result in corrective action and, a few days later, Kopf discussed the incident with a female Oklahoma City police officer whom she viewed as a mentor. Within the next few days, the undersheriff and the jail administrator learned of Kopf's discussion of the incident with the OCPD officer and reprimanded her for going outside of the chain of command and discussing the matter with someone outside the CCSO.

On January 7, 2014, Kopf was interviewed by Lt. Darnell as part of a background investigation process conducted for all prospective deputy sheriffs. The interview lasted longer than two hours and at the end, Darnell joked that he would "keep [Kopf] around" as long as she did not get involved with any males at the CCSO.

In March of 2014, Kopf was promoted to deputy sheriff and given a pay increase. She was still assigned to duties at the jail at that time. The next month, Kopf was transferred

---

[1] Facts are only construed in Kopf's favor when she has "set forth specific facts showing a genuine issue for trial." Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). In some instances, Kopf's responses to defendants' asserted facts are non-responsive and do not create a factual dispute.

2

from the jail to the civil division—a transfer she considered to be favorable.

In May 2014, Kopf received a reprimand for insubordination based on use of an e-cigarette in violation of a verbal CCSO policy after she had been specifically informed of the policy.

In June 2014, Darnell performed a followup background interview with Kopf in which he ultimately indicated he would be recommending her termination, based on what he viewed as deceptive answers on her employment application regarding past drug use and employment. After the interview, Darnell recommended termination of Kopf's employment to Sheriff Edwards, and Edwards fired Kopf effective July 8, 2014.

Discussion

Kopf asserts three claims against defendants. First, she asserts a Title VII claim against the county, alleging gender discrimination contrary to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.[2] Second, she asserts § 1983 claims against both Sheriff Edwards in his official capacity (i.e. against the county) and Lt. Darnell, alleging retaliation based on exercise of her First Amendment rights. Finally, she asserts a Burk tort under state law,[3] alleging her termination violated state public policy as established by the Oklahoma Anti-Discrimination Act, 25 Okla. Stat. §§ 1101, et seq., and the Free Speech

---

[2]*The complaint also makes passing reference to 42 U.S.C. § 1981 as a basis for claim, but that statute applies only to claims of racial discrimination and plaintiff makes no such claim in this case. See § 1981 ("All persons within the jurisdiction of the United States shall have the same right . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . .").*

[3]*Burk v. K-Mart Corp., 770 P.2d 24 (Okla. 1989).*

3

clause of the Oklahoma Constitution, Okla. Const. art. II, § 22.

Title VII Claim

Kopf alleges that she was discriminated against and terminated on the basis of her gender. She offers no direct evidence of discrimination based on gender, so the claim is evaluated for summary judgment purposes under the McDonnell Douglas burden-shifting framework.[4] Under this framework, a plaintiff must offer evidence sufficient to make out a *prima facie* case of discrimination based on the prohibited ground. Smothers v. Solvay Chemicals, Inc., 740 F.3d 530, 538–39 (10th Cir. 2014). If she does so, the burden then shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* If the defendant satisfies this burden, the burden then shifts back to the plaintiff to produce evidence that the employer's stated justification is pretextual—that is, that a material question of fact exists as to whether the employer was motivated by the discriminatory reason and whether the employer's justification is "unworthy of credence." Id.

To make out a *prima facie* case of discrimination, the plaintiff bears a "light burden" to show that she "(1) belongs to a protected class; (2) was qualified for her position; (3) was discharged despite her qualifications; and (4) was terminated under circumstances which give rise to an inference of unlawful discrimination." Swackhammer v. Spring/United Mgmt Co., 493 F.3d 1160, 1166 (10th Cir. 2007) (internal quotation marks and citation omitted).

---

[4]*McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04 (1973).*

4

Circumstances giving rise to an inference of unlawful discrimination may include preferential treatment given to employees outside the protected class and remarks made by decisionmakers that could reflect a discriminatory animus. Plotke v. White, 405 F.3d 1092, 1101 (10th Cir. 2005).

Here, Kopf asserts she was treated differently from male co-workers in that her background interview with Darnell was longer than theirs. She asserts she was provided less equipment for her duty belt. She also asserts she was disciplined for violation of a policy against use of e-cigarettes, when her co-workers were not disciplined for similar violations. She also indicates she was disciplined for issues as to her background check no more serious than ones which did not get her male co-workers in trouble, or at least did not trigger similar discipline. This is sufficient to make out the necessary *prima facie* showing.

Sheriff Edwards asserts insubordination and dishonesty on Kopf's employment application as legitimate, nondiscriminatory grounds for her termination and there is a basis in the evidence to support those assertions. The burden therefore shifts to Kopf to show that those asserted grounds are pretextual.

Plaintiff's evidence of pretext is thin. She relies heavily on her January interview taking over two hours as an indication that she was being treated differently because of her sex. But she does not dispute defendant's evidence that approximately twenty other applicants had interviews which lasted over an hour and a half. More importantly, she ignores the fact that after the two hour interview she was promoted to the deputy position which she sought. That circumstance plainly does not support an inference of discrimination.

Her complaints about her gear belt suggest the problem was, at least in part, that the belt didn't fit well and it is difficult to attach much significance to plaintiff's somewhat indefinite suggestions as to the gear she got. The joking comment at the conclusion of the first interview is perhaps some evidence of discrimination, though the nature of the comment and sequence of events result in it having little, if any, probative impact.

Plaintiff has, however, produced evidence suggesting that male employees were treated differently, both in the enforcement of the CCSO's anti-smoking policy and, more importantly, that at least one other deputy had significant misrepresentations in his application for employment, arguably as serious as those of plaintiff, which did not result in discipline.[5]

With respect to the claimed misrepresentations by Kopf in her employment application, defendants claim Kopf failed to disclose the unfavorable circumstances of leaving employment at an insurance agency, and failed to disclose prior use of methamphetamine. However, there is at least a permissible inference that she represented what she understood the reason for her termination to have been and that, given the specific wording of the drug question, she did not falsely answer it.[6] In any event, while defendant's views of the evidence is also permissible, it is not so obviously correct as to preclude finding

---

[5]*The other employee had falsely indicated he had never been arrested and also falsely stated that no lawsuits had been filed against him, when in fact several had been.*

[6]*She acknowledged prior drug use in two instances and, in response to the direction to "explain fully", she identified marijuana as to one of the instances and unspecified drug use with her boyfriend as to the other.*

6

a justiciable question as to pretext.

In any event, and while the question is close, the court concludes plaintiff has prevented sufficient evidence of pretext to avoid summary judgment on the Title VII claim.

First Amendment Retaliation Claim

Suits against a public official in their official capacity are, in substance, a suit against the political subdivision of which they are an officer. Moss v. Kopp, 559 F.3d 1155, 1168 n. 13 (10th Cir. 2009). In § 1983 suits, political subdivisions may be liable for constitutional violations where the violation stems from an official policy or from a well settled governmental custom or practice. Monell v. Dep't of Social Serv. of New York, 436 U.S. 658, 690 (1978). Thus, a political subdivision may be bound by the actions of an official with "final policymaking authority" with respect to the alleged constitutional violation. Moss, 559 F.3d at 1168–69. When the official with final policymaking authority ratifies a subordinate's decision and the impermissible basis for that decision, however, that ratification may subject the local governmental entity to liability. Id.

Here, Kopf claims that she engaged in protected speech when she reported suspected inmate abuse to her mentor. She further claims the retaliation for her speech came in the form of Darnell's protracted and intrusive background interview conducted two weeks after her protected speech. All parties acknowledge that Sheriff Edwards was the final decision-maker for the termination decision at issue here, but plaintiff argues that Edwards' personnel decision was based on the recommendation of Lt. Darnell. Plaintiff's retaliation claim is against both the county and Lt. Darnell individually.

To determine whether a public employer has unconstitutionally retaliated against an employee for engaging in protected speech, courts employ the five-step Garcetti-Pickering test. That test includes the following inquiries:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

Leverington v. City of Colorado Springs, 643 F.3d 719, 724 (10th Cir. 2011) (quoting Dixon v. Kirkpatrick, 553 F.3d 1294, 1302 (10th Cir. 2009). The first three questions are for the court and the last two are ordinarily for the trier of fact. Brammer-Hoelter v. Twin Peaks Charter Acad., 492 F.3d 1192, 1205 (10th Cir. 2007).

Here, the court has considerable doubt whether plaintiff's report of the alleged abuse would qualify as speech other than in the course of her official duties, but it is unnecessary to definitively resolve the issue here.[7] Similarly, the court has considerable doubt whether plaintiff's claim survives the weighing of the interests involved. Law enforcement organizations have substantial and legitimate interests in maintaining the confidentiality of their investigations and operations, and confidentiality would be virtually impossible to maintain if employees were permitted to share confidential information outside the

---

[7]The "public concern" element is met here, as the question of whether abuse of a prisoner is occurring in a county jail appears to meet the second element. See Brammer-Hoelter, 492 F.3d at 1205 (10th Cir. 2007) ("Statements revealing official impropriety usually involve matters of public concern.").

8

organization merely by designating the information recipient as their "mentor." Further, plaintiff's transmission of the information to the OCPD officer appears less involved with "whistleblowing" in any conventional sense, than with simply getting personal guidance. However, it is also unnecessary to reach a definitive conclusion as to this element.

While the fourth element—whether the protected speech was a motivating factor in the employment decision—is ordinarily for the trier of fact, there is no dispute of material fact as to the issue and it is determinative here. Plaintiff's claim is squarely based on the assertion that Sheriff Edwards followed and relied on the recommendation of Lt. Darnell. And it is undisputed that Lt. Darnell did not even know about plaintiff's report of abuse to the OCPD officer until <u>after</u> plaintiff had been terminated. Defendant has asserted as an undisputed fact that "[i]n fact, Darnell did not learn about the . . . alleged inmate abuse issue until February 29, 2016 when [alleged offender] gave his deposition in this case." Fact No. 34, Doc. No. 47. Plaintiff did not dispute that fact.[8] And in the face of that undisputed fact, the claimed temporal proximity of events to each other does not help the plaintiff.[9] The result is that the undisputed facts make it clear that plaintiff's report of abuse to her mentor was not a motivating factor in the decision to terminate.

Summary judgment will be granted for defendants as to the First Amendment

---

[8]*Contrary to plaintiff's suggestion, the fact proffered by defendants was not just that Darnell "claimed" not to have known, but that he, in fact, did not know of the report of alleged abuse.*

[9]*Given the time lapse between the report of abuse and the termination decision, some five to six months later, it is difficult to draw any inference of the events being connected. As noted above, the event that <u>was</u> close to the time of the abuse report—the two-hour interview—was unremarkable and followed by a promotion.*

retaliation claim.

Burk Tort

Both defendants moved for summary judgment on Kopf's Burk tort claim on the basis she had not identified a "clear mandate of public policy" as articulated by Oklahoma law that was violated by her discharge. In Kopf's response, she indicates that her Burk claim relies on the free speech provisions of the Oklahoma Constitution and the Oklahoma Anti-Discrimination Act's prohibition of discrimination on the basis of gender.

Defendants raise in reply briefs, for the first time, at least two issues with the Burk claim. First, they argue that any Burk tort against them in their official capacities (and thus, against Canadian County) must satisfy the requirements of the Oklahoma Governmental Tort Claims Act, 51 Okla. Stat. § 151 et seq. ("OGTCA"). Second, Darnell argues the Burk claim against him in his individual capacity must fail because Burk torts do not extend to impose individual liability on coworkers or supervisors. See Eapen v. McMillan, 196 P.3d 995, 998 (Okla. Civ. App. 2008).

The court has considerable doubt whether plaintiff's Burk claims will make it to the jury, due to some or all of the issues defendants have belatedly raised. Non-compliance with the OGTCA may bar their consideration as to the county. The state anti-discrimination statute may well preclude, in this context, a separate common law or Burk tort. Such theories may or may not permit recovery against an individual supervisor (or other higher up) like Lt. Darnell. But defendants' belated arguments in this regard are just that—belated—and the court will not ordinarily consider summary judgment arguments made for the first time in a

reply brief. The motions will be denied as to the Burk claims.

## Conclusion

Defendants' motions for summary judgment [Doc. Nos. 47 and 49] are **GRANTED** as to plaintiff's §1983 First Amendment retaliation claims, but are otherwise **DENIED.**

**IT IS SO ORDERED**.

Dated this 1st day of June, 2016.

JOE HEATON
CHIEF U.S. DISTRICT JUDGE